In the Matter of Mike ELLISON, d/b/a Ellison Builders, a/k/a Mike Ellison Construction and Judy Ann Ellison, Debtors.

SAVANNAH VALLEY CARPETS, Plaintiff,

v.

Mike ELLISON, d/b/a Ellison Builders, a/k/a Mike Ellison Construction and Judy Ann Ellison, Defendants.

HARBIN LUMBER COMPANY OF ROYSTON, INC., Plaintiff,

v.

Mike ELLISON, d/b/a Ellison Builders, a/k/a Mike Ellison Construction and Judy Ann Ellison, Defendants.

GAINES ACE HARDWARE, Plaintiff,

v.

Mike ELLISON, d/b/a Ellison Builders, a/k/a Mike Ellison Construction and Judy Ann Ellison, Defendants.

Bankruptcy No. 81–30184.

Adv. Nos. 82–3008 to 82–3010.

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Feb. 18, 1983.

Jerry N. Neal, Royston, Ga., for plaintiffs.

J. Glenn Brown, B. Andrew Prince, Athens, Ga., for defendants.

## MEMORANDUM OPINION ON OBJECTIONS TO DISCHARGE

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

On November 23, 1981, Defendants Mike Ellison, d/b/a Ellison Builders, a/k/a Mike Ellison Construction, and Judy Ann Ellison filed with this Court their joint petition under Chapter 7 of Title 11 of the United States Code. On February 9, 1982, Plaintiffs Gaines Ace Hardware, Savannah Valley Carpets, and Harbin Lumber Co. of Royston (hereinafter Plaintiffs) each filed an adversary proceeding objecting to Defendants' discharge in bankruptcy.

All three adversary proceedings assert the same grounds for denying Defendants a discharge in bankruptcy, and on March 22, 1982, the Court, with the consent of all parties, entered an order consolidating the three adversary proceedings. A trial in the consolidated adversary proceedings was held on May 11, 1982, at which time the complaints were dismissed as to Defendant Judy Ann Ellison.

After reviewing the evidence and considering the briefs and arguments of counsel, the Court is of the opinion that Plaintiffs' objections must be sustained and Defendant denied a discharge in bankruptcy. In support of its opinion, the Court publishes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Defendant was a contractor engaged in the business of constructing private residences. Defendant testified that in the eleven months prior to filing his bankruptcy case, he received approximately $315,000 in gross income from his business.

Defendant's business should have functioned in the following manner. Typically, the person for whom Defendant contracted to build a residence would obtain a loan from a lending institution, and as the construction progressed, Defendant would be given "advances" from the loan proceeds. From the advances, Defendant was to pay his suppliers from whom he purchased the materials necessary for the construction of the residence.

When construction of the residence was completed, Defendant was required to sign an "affidavit of completion," certifying that all materialmen and laborers had been paid for the materials and services furnished for the construction of the residence.[1] If the lender was the Farmers Home Administration (FHA), Defendant was also required to complete a form designated as a "Release by Claimants." In order to complete the form, Defendant was required to obtain the signature of each claimant who had supplied labor or materials for the residence. The signature of the laborer or materialman served as an added check to insure that all claims for labor and material had in fact been paid. After Defendant submitted all necessary documents in completed fashion, the final distribution of the loan proceeds would be made to him.

The procedure described above is the way Defendant's business transactions should have worked. However, as Defendant's financial condition deteriorated, he ceased making the payments to Plaintiffs and other suppliers. In order to obtain final payment from the FHA, Defendant caused fictitious names to be entered on the FHA's "Release by Claimants" forms. He then caused the FHA's funds to be deposited into his checking account.

Defendant did not keep any records of his business dealings other than his cancelled checks and bank statements. He did not keep books indicating to whom he owed

1. In accordance with O.C.G.A. § 44–14–361(b) (1982).

money or for what residence a claimant had supplied materials or labor. At trial, he could not testify as to how much he had paid his laborers because he kept no records of his cash payments to them. From Defendant's records, it is impossible to ascertain the disposition of a large portion of the loan proceeds which he received in his construction business. In particular, large cash withdrawals from his checking account, sometimes as much as $12,000 in one month, are undocumented. In addition, it is difficult to ascertain what portion of Defendant's resources were used to fund an unsuccessful attempt to operate a barbeque business.

## CONCLUSIONS OF LAW

In their complaints, Plaintiffs have asserted that Defendant must be denied a discharge on four grounds:

1. That Defendant destroyed, mutilated, falsified, concealed or failed to keep or preserve books of account or records from which his financial condition and business transactions might be ascertained;

2. That Defendant has failed to explain satisfactorily any losses of assets or deficiency of asserts to meet his liabilities;

3. That Defendant has failed to list the names, addresses, and amounts due and owing all of his creditors; and

4. That during September, October, and November, 1981, Defendant transferred, removed, destroyed or concealed, or permitted to be removed, destroyed, sold or concealed, his property with intent to hinder, delay or defraud his creditors.

■ The Court will first address Plaintiffs' fourth ground, that Defendant has transferred property with the intent of hindering, delaying, or defrauding his creditors. This argument is based on section 727(a)(2)(A) of the Bankruptcy Code. 11 U.S.C.A. § 727(a)(2)(A) (West 1979). When such an allegation is made, the burden is on the party objecting to discharge to prove the facts essential to his objection. R.Bankr.P. 407, *Home Indemnity Co. v. Oesterle (In re Oesterle),* 651 F.2d 401 (5th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982).

■ The Court is of the opinion that Plaintiffs have not carried their burden on their contention that Defendant has transferred property with the intent to hinder, defraud or delay a creditor. Plaintiffs have not demonstrated the facts essential for the Court to find that Defendant has made any transfer of property of the estate with the requisite intent to hinder, defraud or delay a creditor of the estate. Thus, the Court may not sustain Plaintiffs' objection on the basis of section 727(a)(2)(A) of the Bankruptcy Code.

Plaintiffs, in their first ground, argue that Defendant has not kept books or records from which Defendant's financial status may be ascertained. This ground for objection to discharge is found in section 727(a)(3) of the Bankruptcy Code, which provides that:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

11 U.S.C.A. § 727(a)(3) (West 1979).

Section 727(a)(3) is intended "to enable creditors, with the assistance of proper books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." 4 Collier on Bankruptcy ¶ 727.-03[1] (15th ed. 1982). The former Fifth Circuit has addressed the question of whether a debtor has kept adequate books

or records.[2] In *International Shoe Co. v. Lewine,* 68 F.2d 517 (5th Cir.1934), the court stated:

> It is intended that there be written evidence orderly made and preserved from which the present financial condition of the bankrupt and his business transactions for a reasonable period in the past may be ascertained with substantial completeness and accuracy, to serve as a substitute for or check against his oral statements. The transactions need not be stated in full detail if they are so identified that inquiry can be made about them. The requirement is not rigid, but the judge is allowed to excuse failure whether total or partial if the circumstances justify it.

*Id.* at 518.

■ The burden is on Plaintiffs to demonstrate that Defendant has kept insufficient records, R.Bankr.P. 407. Defendant may defend by proving that there is justification for his failure to keep records. The former Fifth Circuit addressed the issue in *Goff v. Russell Co.,* 495 F.2d 199 (5th Cir. 1974). The Fifth Circuit reiterated the requirements of *International Shoe Co. v. Lewine* and then went on to explain the circumstances in which a debtor might be excused for his failure to keep adequate books or records:

> The failure to keep adequate books or records may often be "justified under all the circumstances." Obviously, an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account. *A higher standard of care is required, however, from a merchant actively engaged in credit transactions.* Considerations relating to the assets, liabilities and complexity of the business are preponderant.

*Id.* at 201–02 (emphasis added). In a footnote, the court noted that:

> Other examples are certainly conceivable: small farmer, traveling salesman, or student. Far from carrying any derogatory connotation this grouping merely indicates that normal people in these classifications have uncomplex financial affairs which do not require books or substantial records.

*Id.* at 201 n. 12.[3]

On the issue of whether a debtor is required to keep books or records, Collier on Bankruptcy states:

> If the occupation or business is of a kind in which normal men would not keep books or records, failure by the debtor so to do does not bar his discharge. But it has been held that the fact that the business in which the debtor was engaged is illegal does not justify failure to keep adequate books and records. A traveling salesman, a wage earner, a priest or other person dealing, in general, in cash, and not engaged in a business wherein credit is extended him so that a duty to creditors arises, may not be obliged to keep books or records. It has even been said that a business may be so small that no books or records are required to be kept, although it would seem that not the size of the business but its complexity fixes the bounds of the duty.

4 Collier on Bankruptcy ¶ 727.03[3] (15th ed. 1982).

■ In these adversary proceedings, Defendant testified that he received gross income of $315,000 over the eleven-month period prior to the filing of his bankruptcy case. He was extended credit by various suppliers and received loan proceeds from the FHA and federally insured savings and loans. He testified that he kept no business records other than the cancelled checks and bank statements from his one checking

---

**2.** Although this United States Bankruptcy Court sits in the Eleventh Circuit, it is bound by all decisions of the former Fifth Circuit handed down by the former Fifth Circuit prior to the close of business on September 30, 1981. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1209 (11th Cir.1981).

**3.** Both *International Shoe Co. v. Lewine* and *Goff v. Russell Co.* were decided under section 14c of the former Bankruptcy Act, a provision substantially similar to section 727(a)(3) of the Bankruptcy Code.

account.[4] Those checks reveal large, unexplained cash withdrawals. Defendant testified that he paid the laborers employed in his business in cash. However, there are no cash receipts from any of these workers and Defendant has nowhere documented those cash payments, thus giving the Court no record from which to check Defendant's oral statement. Defendant also testified that he paid his living expenses from his business checking account.

From the record, it is impossible to determine the disposition of all of the loan proceeds received by Defendant. It may be true that Defendant used all of the loan proceeds to pay his laborers and to pay his living expenses. However, Defendant's "business records" do not give any clue as to the disposition of those funds. The Court must therefore find that Defendant's cancelled checks and his bank statements do not provide an adequate basis from which Defendant's financial condition or business transactions may be ascertained and that Defendant has not justified his failure to keep adequate records.

In the eleven months prior to filing his bankruptcy case, Defendant grossed in his business $315,000. Defendant now has a duty to explain to his creditors the disposition of those funds. However, because of Defendant's lack of records, he is unable to fulfill his duty. The Court is of the opinion that in a business of the size and complexity of Defendant's, simple business sense would have caused Defendant to keep books and records sufficient to fulfill his duty. The Court cannot condone Defendant's failure to keep adequate books and records. A businessman must be accountable if he is to enter into business. Defendant, because he failed to keep sufficient books and records, ignored his duty to be accountable, and the

4. Defendant paid both his business expenses and his personal expenses from the loan proceeds, which were deposited in the same bank checking account.

5. Section 727(a)(5) of the Bankruptcy Code provides that:
(a) The court shall grant the debtor a discharge, unless—

Court therefore should not grant him a discharge in bankruptcy.

The second ground argued by Plaintiffs for denying Defendant a discharge in bankruptcy is that Defendant has failed to explain satisfactorily a loss of his assets.[5] This ground is related to Plaintiffs' first ground. The failure of Defendant to keep adequate records makes it impossible for the Court to ascertain the disposition of the large sums of cash withdrawn from Defendant's checking account. The Court cannot say that it is satisfied with Defendant's explanation of the disposition of the large sums.

Plaintiffs, in demonstrating that Defendant has withdrawn as much as $12,000 from his checking account in cash in one month, have carried the burden of establishing the facts essential to their objection. R.Bankr.P. 407. The burden thus shifts to Defendant to provide a satisfactory explanation of the loss of assets. Collier on Bankruptcy has summarized the debtor's burden as follows:

Just what constitutes a satisfactory explanation has not been expressly defined, but it probably means that the debtor must explain his losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct. . . . An explanation which is based mostly upon an estimate of the debtor founded upon nothing by way of verification or affirmation by means of books, records or otherwise has been held unsatisfactory. Even though the underlying facts referred to by debtor may suggest a plausible explanation, the testimony may be so general as to be insufficient. More is required of the debtor in the way of explanation than mere generalities.

. . . .
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . .

4 Collier on Bankruptcy ¶ 727.08 (15th ed. 1982).

Defendant, in response to Plaintiffs' showing, has shown to the Court only vague generalizations as to what happened to the large amounts of cash he took from his checking account. This failure results from Defendant's failure to keep adequate records. Defendant has not demonstrated to the court that he conducted his business in a businesslike manner. One engaged in a business of the size and complexity of Defendant's must engage in that business in a manner which affords accountability. Defendant is unable to explain satisfactorily the disposition of the cash withdrawals and therefore is unable to make a complete accounting of his financial status.

■ In Plaintiffs' third ground, they argue that Defendant has failed to list the names, addresses and amounts owing to all of his creditors. Plaintiffs have presented no evidence to support this contention. Since Bankruptcy Rule 407 places on Plaintiffs the burden of establishing the facts essential to their objection, this ground may not be sustained.

■ At trial, Plaintiffs also argued that Defendant should be denied a discharge in bankruptcy because of his execution of false affidavits and releases to the FHA and other lending institutions. While this may cause an individual debt to be declared nondischargeable, see 11 U.S.C.A. § 523(a) (West 1979), it is not grounds to deny Defendant a discharge in bankruptcy. A false oath in a case, for which a debtor may be denied a discharge, must be made "in or in connection with the case." 11 U.S.C.A. § 727(a)(4) (West 1979). In this case, the false documents were executed prior to the commencement of the bankruptcy case and thus were not in or in connection with this Chapter 7 case.

An order in accordance with this opinion is attached hereto.